UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DORIS AIKEN FORD
   Appellant

v.

W. MARTYN PHILPOT, ESQ.
   Appellee

CIVIL ACTION NO.
3-05-cv-1091 (JCH)

NOVEMBER 18, 2005

FILED
2005 NOV 21  A 8: 42
U.S. DISTRICT COURT
BRIDGEPORT, CONN

## RULING

The appellant, Doris Aiken Ford, has filed this appeal in connection with a decision rendered in the Bankruptcy Court (Krechevsky, J.), dated May 25, 2005. In that decision, the Bankruptcy Court overruled the appellant's objection to the appellee's Application for Compensation and Reimbursement of Expenses ("Application").

Ford was a debtor in the Bankruptcy Court, having filed a Chapter 7 Petition under the Bankruptcy Code. The only asset of her estate was a claim against the Worcester Insurance Company (hereinafter referred to as "Worcester litigation"), which claim arose out of a loss suffered by Ford, and her wholly-owned corporation, Personal Management, Inc. ("PMI").[1] Worcester Insurance Company insured certain properties which PMI owned in Hartford.

The appellee, Attorney W. Martyn Philpot, Jr., was retained as special counsel by the Chapter 7 trustee to represent the estate in the prosecution of the Worcester litigation.[2] Philpot represented the estate on a contingency fee basis, as approved by the Bankruptcy Court pursuant to 11 U.S.C. § 327(e).

---

[1] The assets of PMI were part of Ford's bankruptcy estate.

[2] Ford had hired Philpot to represent her and PMI in the Worcester litigation prior to filing for bankruptcy. Bankruptcy Court Ruling, p. 5.

Eventually, after mediation, the Worcester litigation was settled for $200,000. The settlement was approved by the Bankruptcy Court over the objection of Ford. Subsequent to the settlement of the Worcester litigation, Ford submitted an "Application for Compensation and Reimbursement of Costs and Expenses." After a six-day trial, the Bankruptcy Court, in its May 25, 2005 Ruling, granted the Application in the amount of $56,667.67 as well as costs in the amount of $653.93.[3]

The court hears this appeal pursuant to 28 U.S.C.§ 158(a). The standard on review in connection on this appeal is *de novo* with respect to the bankruptcy court's conclusions of law, and clear error with respect to the bankruptcy court's findings of fact. Fed. R. Bankr . P. 8013; In re U.S. Lines, Inc., 318 F.3d 432, 435-36 (2d Cir.2003). In applying the clear error standard of review, a district court may reverse the bankruptcy court only where it is "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

Due to Ford's pleading, it is difficult to articulate the legal bases for her appeal from Judge Krechevsky's May 25, 2005 decision. In general, it is clear that Ford was dissatisfied with the services and representation of Philpot. Ford attacks findings of fact made by Judge Krechevsky that were based upon his judgment as to the credibility of Philpot and Ford. Ford also references threats and wrongful behavior by Philpot against Ford, although it is unclear how these allegations relate to Judge Krechevsky's

---

[3] The awarded fee represents the agreed upon contingency of one-third, minus a $10,000 retainer paid by the appellant, which the letter of representation provided would be credited to Ford.

decision. In her "Statement of Issues," appearing on pages two through four of her brief, Ford lists four issues. Appellant's Brief, pp. 2-4 [Dkt. 20]. The court will discuss them in order.

1. The first issue stated reads:

"Is the debtor entitled to a fair trial and just ruling by Judge Krechevsky to maintain faithful to the law and maintain competence in it. On the question of whether the Special Counsel although recommended by the debtor to properly present pursuant to the provisions of all Bankruptcy Codes governing the State of Connecticut be obeyed and followed to the letter all Bankruptcy Laws."

Appellant Brief, p. 3. It is not entirely clear to the court what questions this issue is meant to raise. To answer the first part, it hardly bears stating that Ford is entitled to a fair trial and just ruling that is faithful to the law and competently rendered. However, the court can find nothing in Judge Krechevsky's decision, nor is there anything identified, that would suggest that the six-day trial was anything other than a fair trial, and that the decision was anything but just. Considered as a whole, there is nothing in the Bankruptcy Court's Ruling which suggests that it was not "faithful to the law" or competently rendered.

2. Secondly, the appellant raises the following issue on appeal:

"Is the debtor entitled to fair and equal protection under the Connecticut laws, regardless of past participation of debtor Doris Ford's association with the Federal Bureau of Investigation. Or any other participant as was deemed necessary and appropriate by State Attorney General's selected debtor Doris Ford as a subpoenaed witness in a State probe as a whistle blower. Should Doris Ford now become less credible as a witness in her own Civil matters, viewed by the ruling judge as less credible then those he can relate to or connect with. Can the ruling judge, completely ignoring the truth, fail to properly identify the true victim, fail to identify a sophisticated scheme set up to operate through the bankruptcy court."

Id. Again, to answer the basic question of this second issue on appeal, the debtor is

obviously entitled to fair and equal protection under all laws. With respect to the rest of the statement of this issue, the court cannot divine what relevance it has to the issue that was before Judge Krechevsky, which was simply the compensation of an attorney in connection with the litigation he handled for the bankruptcy estate. Nothing before this court supports the conclusion that Judge Krechevsky "ignored the truth," failed to properly identify "the true victim," or failed to properly identify a "sophisticated scheme set up to operate through the bankruptcy court." Id.

     3.    With respect to the third issue on appeal, the appellant states as follows:

> Was the court in error when it ruled after a six day trial on credibility of expert witness Saxe, testified that he did not know what Section 8 was or Project Based Section 8 Certificates. How could this person determine the losses or value of Personal Management, Inc. $3,858,000.00 in guarantee Section 8 Rental Income caused solely by and [sic] 18 months delay in rendering a decision to deny PMI Vandalism Claim. Doris Ford has won the privilege to fight an Emotional Distress Claim in the Worcester case. This claim was not pursued at all by Attorney Martyn Philpot, Jr. At no time was Doris Ford asked to get tested or evaluated by the Worcester defendants, or by Attorney Philpot. When asked if Philpot wanted records from the medical professionals seen by Doris Ford on two or three occasions Attorney Philpot said, "no because we are not going to trial with the Worcester case."

Id. at 3-4. This issue, of course, is relevant in some respects to the decision of Judge Krechevsky. This issue presents the question whether Philpot provided competent services in obtaining a settlement of $200,000, of which he claimed entitlement to one-third of the recovery. At the trial, Attorney Tracy Alan Saxe testified in support of Philpot's application for fees. It is plain from the record before this court that, in the Worcester litigation, the appellant and PMI had several difficulties to overcome before they could possibly recover anything, not the least of which was a question about the timely notice of claim. Given the deferential standard to be afforded to Judge

Krechevsky with respect to findings of fact, the court cannot find error in any of the Bankruptcy Court's conclusions concerning the reasonableness of the settlement or the reasonableness of attorney's fees awarded as a result. The appellant complains that she was required to surrender for an emotional distress claim for no value. The record indicates that Philpot obviously did not view that claim as valuable. His view was joined, in essence, by the mediator in Superior Court, the Honorable Jonathan Silbert, who mediated the settlement of $200,000, and further by the Trustee and by the Bankruptcy Court in the Court's approval of the Trustee's recommendation for approval of a $200,000 settlement. The record amply supports the Bankruptcy Court's acceptance of the settlement of $200,000.

Attorney fee awards by bankruptcy courts are reviewed for abuses of discretion. "Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which discretion will not be disturbed by an appellate court absent a showing that it was abused." In re JLM, Inc., 210 B.R. 19, 23 (2nd Cir. 1997). "An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous." Id. (citing In re Hunt, 196 B.R. 356, 358 (N.D.Tex.1996)).

In approving Philpot's fee, the record indicates that the Bankruptcy Court properly considered those factors which are identified in 11 U.S.C. § 330(a)(3) to be considered in connection with the award of a fee.[4]  A contract existed between Philpot

---

[4]11 U.S.C. § 303(a)(3) reads:
In determining the amount of reasonable compensation to be awarded to an examiner,

and the estate stating that he was entitled to a one-third contingency fee for his work in obtaining the Worcester litigation settlement. Judge Krechevsky's decision indicates that he evaluated this contractual fee in light of the section 330(a)(3) factors and also after reviewing Philpot's submission of time sheets and a list of his activities in prosecuting the Worcester litigation. Bankruptcy Court Ruling, p. 7. The court finds nothing in the record, or in Judge Krechevsky's decision, that suggests that the Bankruptcy Court abused its discretion in approving Philpot's fee.

4. The fourth issue on appeal cited by the appellant is:

> Professional conduct of Attorney Martyn Philpot's credibility was not viewed by Judge Krechevsky as he heard testimony and exhibits as it relates to the following: $10,000 Thousand Dollars Cash, design for the pockets of Attorney Martyn Philpot as he setup Doris Ford to conspire, to defraud her of her money as he planned in advance to fool Doris Ford into a settlement with Capitol Housing Finance Corporation ("CHFC") only to get 10,000 for his pocket. While Doris Ford give up a $25,000,000 Claim against CHFC at the demand of attorney Philpot: On June 6, 2000 in a letter of representation from attorney Philpot's law firm it is stated that Doris Ford had to voluntarily settle her claim against CHFC for $50,000, as a perquisite [sic] before Philpot firm would take Doris Ford case.

---

trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
  (A) the time spent on such services;
  (B) the rates charged for such services;
  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
  (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Appellant Brief, p. 4. The court does not read this statement of issue on appeal to raise questions concerning the May 25, 2005 decision. As described above, the Bankruptcy Court's decision took into account the $10,000 retainer paid in advance as a credit against the one-third contingency fee. As to other aspects of this "issue on appeal," it does not attack or provide a basis to reverse the Bankruptcy Court's May 25, 2005 decision. To the extent the appellant may be able to raise legitimate issues concerning counsel's professional conduct, this appeal is not the proper forum for such issues. The appellant can pursue a grievance if there is a basis to do so. However, nothing in this issue calls into question, either as a matter of law or fact, the Bankruptcy Court's conclusion that the one-third contingency fee, plus costs, pursuant to a written fee agreement, was a reasonable fee, based on the settlement that was reasonably approved by the Bankruptcy Court.

Therefore, having reviewed Judge Krechevsky's May 25, 2005 Ruling as well as the arguments of both Ford and Philpot, it is the conclusion of this court that the factual findings of the Bankruptcy Court were well founded on the record before him, that it made no errors of law in deciding the May 25, 2005 Ruling, and that, therefore, this appeal is denied and the Bankruptcy Court's May 25, 2005 Ruling is affirmed.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of November, 2005.

Janet C. Hall
United States District Judge